IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VOLITA RUSSELL** )<br>7826C Harrogate Circle, )<br>Springfield VA 22152 )<br> )<br>    Plaintiff, )<br> )<br> )    **CIVIL ACTION NO.:**<br>v. )<br> )<br>**NATIONAL COLLEGIATE** )<br>**PREPARATORY PUBLIC CHARTER** )<br>**SCHOOL** )<br>4600 Livingston Road, S.E. )<br>Washington, D.C. 20032 )<br> )<br>    Defendant ) | |

## COMPLAINT

This is an action under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C § 12101 *et. seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2612, *et seq.*, the District of Columbia Family Medical Leave Act ("DCFMLA") and the District of Columbia Human Rights Act ("DCHRA") to correct unlawful employment practices by Defendant National Collegiate Preparatory Public Charter School ("Defendant") and to provide appropriate relief to Plaintiff Volita Russell ("Ms. Russell") who was adversely affected by such practices. Defendant subjected Ms. Russell to disability discrimination and retaliation after she complained to Defendant about the discriminatory practices.

## PARTIES

1. Ms. Russell is former employee of Defendant and a resident of Virginia.

2. Defendant is a public charter school that does business in the District of Columbia.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. All jurisdictional predicates have been met.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the Defendant does business in this District and Defendant's unlawful employment practices occurred in this District.

## STATEMENT OF CLAIMS

5. Ms. Russell dutifully worked as the Dean of Student Affairs from August 31, 2015 until March 2, 2017.

6. Throughout her tenure with Defendant, Ms. Russell made significant contributions to ensure Defendant's success.

7. Ms. Russell never had a negative performance evaluation throughout her entire tenure with Defendant.

8. On December 9, 2016, Ms. Russell was rushed to the hospital after she intervened in a fight between two students. As she attempted to break-up the fight, Ms. Russell fell and hit her head on the concrete floor. She subsequently went out on medical leave as a result.

9. Before returning to work, Defendant's Principal, Cordelia Postell assured Ms. Russell that the students involved in the fight were expelled and it was safe for her to return to work.

10. On January 17, 2017, Ms. Russell returned to work and saw one of the students who was involved in the fight and she suffered a panic attack, inclusive of sweating, dizziness, crying, shaking, inability to walk and increase in heart pacing.

11. On January 19, 2017, Ms. Russell visited her primary care physician, Dr. Victoria Currall who informed her that her symptoms were signs of post-traumatic stress syndrome ("PTSD") as a result of the December 9, 2016 fight.

12. Dr. Currall told Ms. Russell that seeing the student upon her return to school triggered these symptoms and referred her to a psychologist.

13. Ms. Russell's medical condition substantially affected her everyday life activities. Specifically, Ms. Russell had difficulty sleeping, sitting, picking up and putting down objects and opening and closing doors, just to name a few.

14. In order to treat her medical condition, Dr. Currall referred Ms. Russell to psychologist, Dr. Richard Baither.

15. From January 18, 2017 until February 1, 2017, Ms. Russell used medical leave to address her PTSD.

16. Instead of allowing Ms. Russell to use medical leave, Defendant deprived her of her personal leave and deducted money from her salary.

17. Ms. Russell took two weeks of medical leave and saw Dr. Baither between January 24, 2017 and January 31, 2017.

18. She contacted Defendant's Executive Director Jennifer L. Ross via email, on or about January 27, 2017 to inform her of her plans to return to work and scheduled a meeting with her. Ms. Ross told Ms. Russell to "take all the time that she needed."

19. While Ms. Russell was out on medical leave, Defendant hired Claude Presley to replace Ms. Russell.

20. Defendant hired Mr. Presley as Lead Dean.

21. On February 1, 2017, Ms. Russell returned to work and met diminished duties and responsibilities.

22. Mr. Presley had usurped some of Ms. Russell's duties and responsibilities.

23. The next day, Ms. Russell met with Ms. Ross and complained about Defendant's decision to replace her by hiring Mr. Presley and his usurpation of her duties and responsibilities.

24. Ms. Russell specifically asked Ms. Ross about Mr. Presley's intended role and whether he was there to replace her or former Director of Operations, Tonya Featherston.

25. Ms. Ross assured Ms. Russell that Mr. Presley was only there to assist her with her duties and told her that she and Mr. Presley should "work it out".

26. Prior to the conversation with Ms. Ross, no one discussed a diminution of duties with Ms. Russell.

27. On February 10, 2017, Ms. Russell complained to Mr. Presley about deducted money from her paycheck for her medical leave usage.

28. Throughout the rest of February 2017, Defendant excluded Ms. Russell from leadership meetings that she previously attended before she went out on medical leave.

29. Instead of rectifying the situation, Defendant told Ms. Russell to relax, that she was no longer needed in leadership meetings and not to worry about her reduced role with Defendant.

30. On March 2, 2017, Defendant completed its erosion of Ms. Russell by terminating her employment.

31. After a staff meeting that Mr. Presley prevented Ms. Russell from attending, he called Ms. Russell into a conference room to inform her that her employment was terminated.

32. Mr. Presley told Ms. Russell that she was "not a good fit at this time."

33. On June 12, 2017, Ms. Russell filed a charge of discrimination and retaliation with the D.C. Office of Human Rights/Equal Employment Opportunity Commission.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE ADA

34. Ms. Russell incorporates by reference her Statement of Claims contained in paragraphs 5 through 33.

35. She is a member of a protected class. She had a disability and Defendant discriminated against Ms. Russell based on her disability.

36. She notified Defendant of her disability.

37. Soon after, Defendant engaged in a series of adverse employment actions, including diminution of duties, exclusion from meetings and termination.

38. Defendant denied Ms. Russell the rights guaranteed to her under 42 U.S.C § 12101 *et. seq.*, which prohibits private employers…from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

39. As a result of the aforementioned discrimination, Ms. Russell suffered loss of income, benefits and career opportunities.

40. As a result of the aforementioned discrimination, Ms. Russell suffered humiliation, mental anguish and emotional distress.

41. Based on the facts described above, Defendant discriminated against Ms. Russell in violation of the ADA.

## COUNT II: DISCRIMINATION IN VIOLATION OF THE DCHRA

42. Ms. Russell incorporates by reference her Statement of Claims contained in paragraphs 5 through 41.

43. She is a member of a protected class. She had a disability and Defendant discriminated against Ms. Russell based on her disability.

44. She notified Defendant of her disability.

45. Soon after, Defendant engaged in a series of adverse employment actions, including diminution of duties, exclusion from meetings and termination

46. The DCHRA makes it illegal for an employer to discharge any individual or otherwise to discriminate against any individual, with respect to her compensation, terms, conditions, or privileges of employment.

47. As a result of the aforementioned discrimination, Ms. Russell suffered loss of income, benefits and career opportunities.

48. As a result of the aforementioned discrimination, Ms. Russell suffered humiliation, mental anguish and emotional distress.

49. Based on the facts described above, Defendant discriminated against Ms. Russell in violation of the DCHRA.

## COUNT III: RETALIATION IN VIOLATION OF THE ADA

50. Ms. Russell incorporates by reference her Statement of Claims contained in paragraphs 5 through 49.

51. She complained to Ms. Ross about the discrimination she believed she encountered.

52. After she complained, Defendant was dismissive, indignant, and targeted her with termination.

53. All persons involved in the decision to terminate and take adverse actions against Ms. Russell were aware of her complaints of disability discrimination.

54. The adverse actions, including the termination, occurred closely in time to Ms. Russell's complaints, creating a causal connection between Ms. Russell's complaints and her termination.

55. As a result of the aforementioned retaliation, Ms. Russell suffered loss of income and fringe benefits.

56. As a result of the aforementioned retaliation, Ms. Russell suffered humiliation, harm to her reputation, emotional distress and mental anguish.

57. Based on the facts described above, Defendant retaliated against Ms. Russell and violated the ADA.

## COUNT IV: RETALIATION IN VIOLATION OF THE DCHRA

58. Ms. Russell incorporates by reference the statements contained in paragraphs 5 through 57.

59. She complained to Ms. Ross about the discrimination she believed she encountered.

60. After complaining, Ms. Russell suffered a series of adverse employment actions.

61. These adverse actions occurred close in proximity to her complaints disability discrimination to create a causal connection.

62. As a result of the aforementioned retaliation, Ms. Russell suffered loss of income, benefits and career opportunities.

63. As result of the aforementioned retaliation, Ms. Russell suffered humiliation, mental anguish and emotional distress.

64. Based on the facts described above, Defendant retaliated against Ms. Russell and violated the DCHRA.

## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

65. Ms. Russell incorporates by reference the statements contained in paragraphs 5 through 64.

66. She invoked her right to FMLA qualifying leave when she applied for and used FMLA leave to care for her serious health condition.

67. Defendant retaliated against Ms. Russell by subjecting her to adverse employment actions after she applied for and used her FMLA mandated leave.

68. Defendant's adverse employment actions were causally related to the invocation of Ms. Russell's FMLA mandated rights.

## COUNT VI: RETALIATION IN VIOLATION OF THE DCFMLA

69. Ms. Russell incorporates by reference the statements contained in paragraphs 5 through 68.

70. She invoked her right to DCFMLA qualifying leave when she applied for and used DCFMLA leave to care for her serious health condition.

71. Defendant retaliated against Ms. Russell by subjecting her to adverse employment actions after she applied for and used her DCFMLA mandated leave.

72. Defendant's adverse employment actions were causally related to the invocation of Ms. Russell's DCFMLA mandated rights.

73. The DCFMLA mirrors the FMLA in that it is unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

74. Defendant's unlawful conduct caused severe financial harm, severe emotional distress and other damages to Ms. Russell.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Russell asks this court to grant the following relief:

Any and all relief available under the ADA, the FMLA, the DCFMLA and the DCHRA including but not limited to the following:

> Declaratory and injunctive relief, including appropriate record correction consistent with the facts of this case and the above-requested relief;
>
> Compensatory damages (pecuniary and non-pecuniary) in an amount to be determined by a jury;
>
> Punitive damages in an amount to be determined by jury.
>
> The reasonable attorney fees at prevailing market rates, costs, and expenses of this action; and
>
> Such other relief as the Court deems just and appropriate.

## JURY DEMAND

Ms. Russell demands a jury for all issues.

_____/S/_____
Ardra O'Neal, Esq. (Bar No.: 45717)
The O'Neal Firm, Inc.
700 12th Street, NW, Suite 700
Washington, DC 20005
1-866-771-0151 (Phone/Fax)
ardra@theonealfirm.com

*Attorney for Plaintiff*